**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANGEL M. STULL, ) | |
| ) | CASE NO.  3:10-CV-00693 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JAMES G. CARR |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Angel M. Stull ("Stull") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Stull's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I.  Procedural History**

On February 22, 2005, Stull filed an application for POD, DIB, and SSI alleging a

disability onset date of August 8, 2001. Her application was denied both initially and upon reconsideration. Stull timely requested an administrative hearing.

On February 11, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Stull, represented by counsel, testified. Joseph Havranek testified as the vocational expert ("VE"). On April 14, 2008, the ALJ found Stull was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age twenty-six (26) at the time of her administrative hearing, Stull is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). Stull has a tenth grade education. (Tr. 321.)

### *Relevant Medical Evidence and Hearing Testimony*

On July 27, 2005, K. Roger Johnson, M.Ed., a licensed psychologist, evaluated Stull at the request of the State Agency. (Tr. 270-74.) Stull stated that she started psychological treatment four months earlier. (Tr. 271.) She reported that she had been prescribed Paxil, but was not currently taking any medication. *Id*. She acknowledged smoking a pack of cigarettes a day, and denied alcohol or drug use. *Id*. Stull stated that she was unable to return to work because, "I don't have any motivation to work and I'm scared to be in crowds." *Id*. On evaluation, Mr. Johnson reported the following. Stull was obese, her clothing was clean, and she was normally groomed. *Id*. She was cooperative and compliant. *Id*. Her posture, gait, and activity level were all within normal limits. *Id*. Her speech articulation was clear and 100%

understandable with normal tone. *Id*. Her conversation was spontaneous. *Id*. Her thought pattern was relevant and coherent without poverty of speech or perseveration. *Id*. She did not exhibit bizarre thinking. *Id*. Stull described her mood as "depressed every day," but Mr. Johnson observed that she "manifested minimal signs of depression/abnormalities." *Id*. Stull's eye contact was appropriate; she manifested normal perseverance at tasks; her level of activity was considered normal; and, her concentration, attention, and alertness were good. (Tr. 271-72.) Mr. Johnson opined that Stull's "memory for personal data and recent events were consistent with overall intellectual functioning of normal range of intelligence, as reflected in her FSIQ score of 88 at the 21st percentile." *Id*. He reported that "[t]he results of the Wechsler Memory Scale indicate no memory impairment." (Tr. 273.) Mr. Johnson diagnosed Stull with a depressive disorder, not otherwise specified, and assigned her a Global Assessment of Functioning ("GAF") score of 70.[1] *Id*. He opined that Stull was not impaired in her ability to relate to others, to understand, remember, and follow instructions, or to maintain the attention, concentration, persistence, and pace to perform simple repetitive tasks. (Tr. 274.) He did qualify her ability to withstand the stress and pressure associated with day to day work activity as mildly impaired. *Id*.

On August 12, 2005, State Agency psychologist Guy Melvin, Ph. D., reviewed Stull's record and found no evidence of a severe impairment. (Tr. 256-68.) Though he noted a diagnosis of depression, he assessed no more than mild limitations as a result. *Id*.

---

[1] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

On September 28, 2005, Stull began seeing psychiatrist Mohen Bohjwani, M.D., for multiple mental impairments: bipolar disorder (depressed, severe, with psychotic features); post-traumatic stress disorder (chronic); panic disorder (with mild agoraphobia); and a history of polysubstance dependence. (Tr. at 248.) She also was diagnosed with a borderline personality disorder and ascribed a GAF score of 60.[2] *Id*. Dr. Bohjwani prescribed Strattera, Seroquel, and Risperdal. (Tr. at 249.)

On December 9, 2005, Dr. Bohjwani completed a Mental Functional Capacity Assessment form indicating that Stull's psychological functioning was extremely limitted in six areas, markedly limited in five, and moderately limited in six others. (Tr. at 194.) He wrote the following on the form:

> I started seeing [Stull] since 9-28-05. She has improved significantly in every respect. But she is taking too much of [medications] which will definitely interfere [with] her attention [and] concentration. Her stress tolerance is very low. She is dependent upon her boyfriend with whom she lives. She was taking various antidepressants in the past four years but none worked. She has been staying completely clean from polysubstance dependence for five years.

(Tr. 195.) He opined that Stull's limitations are expected to last twelve months or more and that she was unemployable. *Id*.

On December 22, 2005, non-examining State Agency psychologist Robelyn S. Marlow, Ph. D., found that Stull had moderate limitations in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors,

---

[2] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 228.) Dr. Marlow opined that Stull could "understand and follow moderately difficult instructions." (Tr. at 229.) She further opined that Stull "displayed some problems with concentration, but not significantly so." *Id*. She noted that Stull "worked [with] the public and could do so again without too much difficulty [but] [d]ue to her personality functioning, she may be resistant to authority figures and may distract others." *Id*. Dr. Marlow opined that Stull "may need a work environment without too many productivity requirements" where she can perform "simple, repetitive work." *Id*.

At the hearing, Stull testified that she has never held a job other than as a cashier. (Tr. 23, 326.) The ALJ asked the VE "how many cashier, *semi-skilled*, light jobs there are in the region?" (Tr. 326) (emphasis added). The VE responded that there are between 10,000 and 15,000 cashier jobs "like she performed them." (Tr. 327.) The ALJ then posed the following hypothetical question:

> Assume an individual the same age, education and work background as the claimant, limited to light, *unskilled* work and limited to occasional, that's defined as up to one-third of the workday, conversation and interpersonal interaction with co-workers and supervisors of a brief duration defined as five to ten minutes at a time. Based on those limitations, and those limitations alone, would there be any jobs in existence for such a limited individual?

(Tr. 327) (emphasis added).

The VE testified that the hypothetical individual could perform a number of jobs and identified the following examples:

> Yes, Your Honor. This would be consistent with such jobs as a hand trimmer of plastic parts. There are approximately 200 to 250 of those in this region, DOT code 781.687-070. One could also be a laundry folder, and there are approximately 750 to 1,000 of those in this region, DOT code 369.687-018. They could also be a collator or operator, approximately 400 to 500 of those in this

5

region, DOT code 208.685-010.

(Tr. at 327.)

Stull's counsel posed the following question to the VE:

[I]f a person had serious difficulties in a broad range of work-related activities, including maintaining attention; maintaining . . . an ordinary routine; completing a normal workday or a work week without interruptions from psychological symptoms; performing consistently at pace without unreasonable breaks; difficulty understanding, remembering and carrying out detailed or even simple instructions; maintaining socially appropriate behavior, would a person with this range of difficulties, would that affect the availability of the jobs that you've described?

(Tr. at 328.)

The VE agreed that such a person could not perform the previously identified jobs.  (Tr. at 328.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Stull was insured on her alleged disability onset date, August 8, 2001 and remained insured through September 30, 2007.  (Tr. 19.)  Therefore, in order to be entitled to POD and DIB, Stull must establish a continuous twelve month period of disability commencing between August 8, 2001 and September 30, 2007.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Stull established medically determinable, severe impairments due to depression and anxiety; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Stull was found capable of performing her past work activities, and also was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Stull is not disabled.

---

performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied.

8

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

On appeal, Stull claims the ALJ erred because: (1) substantial evidence did not support the past relevant work finding; (2) the opinion of a non-examining State Agency psychologist was not properly evaluated; and, (3) the procedures set forth in Social Security Ruling ("SSR") 00-4p were not followed. (Doc. No. 12 at 1.)

**Past Relevant Work**

Stull argues that the ALJ's finding that she can perform her past relevant work is unsupported by substantial evidence because: (1) the VE never testified that Stull could perform her past relevant work as a cashier; and, (2) the ALJ's finding that Stull was limited to unskilled work is inconsistent with the Dictionary of Occupational Title's ("DOT") description of a cashier as "semi-skilled." (Doc. No. 12 at 9.)

Section 211.462-018 of the DOT identifies cashier as having a Specific Vocational Preparation ("SVP") designation of 3. An SVP of 3 constitutes "semi-skilled" work. SSR 00-4p, 2000 SSR LEXIS 8 at *7 (Dec. 4, 2000) (The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. § 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work

corresponds to an SVP of 3-4). The Commissioner concedes that the DOT identifies cashier as semi-skilled, light work. (Doc. No. 14 at 18, n. 12.)

The ALJ's statement in his decision that the "[VE] testified that claimant's past work as a casher [sic] was in the light, unskilled category of exertion" is factually incorrect. (Tr. 23.) In addition, the VE never testified that Stull could perform her past relevant work as a cashier. (Tr. 326-28.) To the contrary, the ALJ implicitly recognized that cashier work is "semi-skilled" when he asked the VE "how many cashier, semi-skilled, light jobs are there in the region?" (Tr. 326.) The Commissioner argues that it was reasonable for the ALJ to find that Stull actually performed her work at an unskilled level based on Stull's own testimony.[4] (Doc. No. 14 at 18.) "The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62 at *7. Moreover, SSR 82-62 requires the determination whether an claimant can perform a past relevant job "must contain among the findings the following specific findings of fact: 2. A finding of fact as to the physical and mental demands of the past job/occupation." The ALJ's classification herein does not contain any specific findings explaining the classification of Stull's past relevant work as unskilled. Herein,

---

[4] "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the [DOT], etc., on the requirements of the work as generally performed in the economy." SSR 82-62, 1982 SSR LEXIS 27 at **6-7 (1982).

the ALJ's only explanation for classifying Stull's past work as unskilled is his mistaken characterization of the VE's testimony. The Commissioner's argument is not well taken, given that the ALJ's hypothetical question clearly stated that Stull's cashier work was semi-skilled, and, in response, the VE stated that there are 10,000 to 15,000 cashier jobs "like she performed them." (Tr. 327.)

The undersigned finds that the ALJ's Step Four finding is unsupported by substantial evidence. However, as a finding that Stull could not perform her past relevant work would merely require the ALJ to complete Step Five of the sequential analysis, a remand is not necessarily required because the ALJ performed a Step Five analysis. As such, unless the ALJ's finding at Step Five is unsupported by substantial evidence or there is a procedural violation, the ALJ's error at Step Four would be harmless. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."); *accord Cadena v. Astrue*, 365 Fed. Appx. 777, 780 (9th Cir. 2010); *cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (court will not remand where doing so would be an idle and useless formality).

**Non-Examining State Agency Psychologist**[5]

Stull argues that the opinion of a non-examining State Agency psychologist, Dr. Marlow, was not properly evaluated by the ALJ. (Doc. No. 12 at 10-13.) It is undisputed that an ALJ must "evaluate every medical opinion" received, regardless of its source, and that "evidence from nonexamining sources [is considered] to be opinion evidence." 20 C.F.R. §

---

[5] The Commissioner's brief is largely unresponsive to this assignment of error. (Doc. No. 14 at 13-17.)

416.927(d)&(f).

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. *Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions*.
>
> 3. An updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made.

SSR 96-6p, 1996 SSR LEXIS 3 at **1-2 (July 2, 1996) (emphasis added).

In his opinion, the ALJ collectively discussed the opinions of the non-examining State Agency medical personnel as follows:

> Non-examining doctors from the State agency assessed the claimant's mental ability to perform work-related activities, in light of the medical evidence of record, and concluded that the claimant had mild to moderate mental limitations (Exhibit 1F p. 63).  These opinions have been considered and weighed, in accordance with the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p.  Following the guidelines set out in the regulations and rulings, the weight of the medical evidence of record demonstrated that the claimant has severe impairments consistent with state agency findings.  Thus, the aforementioned opinions are supported by the weight of the record.

(Tr. 23.)

Although the ALJ ostensibly found that Dr. Marlow's opinion was supported by the weight of the record, Stull argues that the ALJ "implicitly reject[ed] Dr. Marlow's opinions inconsistent with the ALJ's [RFC] assessment."  (Doc. No. 12 at 11.)  Stull asserts that the ALJ essentially rejected the following opinions of Dr. Marlow: (1) Stull could perform simple, repetitive tasks; (2) Stull may be resistant to authority figures and may distract others; and, (3) Stull may need a work environment without too many productivity requirements.  (Doc. No. 12

12

at 11-12, *citing* Tr. 229.)

As this Court understands the argument, Stull asserts that the ultimate RFC found by the ALJ failed to encompass the aforementioned opinions of Dr. Marlow. Therefore, she concludes that the ALJ rejected these opinions without explaining the reasons for doing so. This Court disagrees that three qualified remarks by Dr. Marlow render the ALJ's ultimate RFC finding inconsistent with Dr. Marlow's opinion. Despite his mistake at Step Four, the ALJ found that Stull could only perform unskilled work, and was limited to occasional (up to 1/3 of the workday) conversation and interaction with co-workers and brief interaction or conversation with supervisors 5-10 minutes at a time). (Tr. 20-21; 327.) The Court cannot find that the ALJ's RFC is inherently inconsistent with Dr. Marlow's statements, especially to the extent that such inconsistency would be tantamount to rejection. The ALJ explained the weight given to the State Agency psychological consultants and complied with the regulations and rulings. To the extent the ALJ's RFC does not expressly encompass all of Dr. Marlow's restrictions, Stull has failed to cite any rule or regulation that would prohibit the ALJ from relying on the more generalized summary conclusions in Section One of the mental RFC assessment, which noted no more than moderate limitations in three areas of social interaction. (Tr. 228.)

**Step Five and SSR 00-4p**

Although the ALJ found that Stull could perform her past relevant work at Step Four, the ALJ also performed a Step Five analysis. Stull asserts that the ALJ failed to follow the procedures set forth in SSR 00-4p.

At Step Five, if a VE testifies in response to a hypothetical question that sets forth all of the claimant's impairments, his response constitutes substantial evidence for a finding of either

disability or nondisability. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1988). A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In this case, the ALJ reasonably incorporated the limitations justified by the evidence of record, including the opinion of non-examining psychologist Dr. Marlow, who found no more than moderate limitations in Stull's ability to engage in social interaction. (Tr. 228.) This conclusion was supported by substantial evidence in the record. Stull's attorney had ample opportunity to, and did in fact, cross-examine the VE at the hearing. The VE identified the following jobs that someone with Stull's limitations could perform: hand trimmer of plastic parts, DOT § 781.687-070; laundry folder, DOT § 369.687-018; and collator or operator, DOT § 208.685-010.[6] (Tr. at 327.) The ALJ determined that the testimony was reliable concerning the type and availability of jobs Stull could perform. Therefore, there is substantial evidence to support the ALJ's finding that Stull was able to perform a limited range of light work and that a significant number of jobs existed in the national economy which she could perform. Thus, the ALJ did not err in relying on the testimony of the VE.

Nonetheless, Stull argues that the ALJ failed to comply with the procedural requirements set forth in SSR 00-4p. SSR00-4p explains as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an

---

[6] The VE also testified as to the number of jobs available for each of the three identified occupations, and stated that he relied on the Labor Market Information Services in Michigan and Ohio, as well as information from the U.S. Department of labor, in order to arrive at the number of jobs he cited. (Tr. 327.)

> apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> ***
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

SSR 00-4p, 2000 SSR LEXIS 8 (Dec. 4, 2000).

The ALJ's opinion indicates that the VE "testified that the evidence provided did not conflict with information contained in the DOT." (Tr. 23.) This statement is not entirely accurate. Rather, in response to the ALJ's hypothetical, the VE identified a number of jobs that such an individual could perform and their listing numbers in the DOT. While it is reasonable to infer that the VE, by identifying the DOT listings, believed he was testifying in a manner consistent with the DOT, it is unclear whether testifying as such relieves the ALJ of his affirmative duty under SSR 00-4p.

Stull relies on *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) for the proposition that "in light of the requirements of SSR 00-4p, an ALJ may not rely on a [VE's] testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." In *Massachi*, the Ninth Circuit noted that "[a]lthough the [VE] was not providing evidence about the 'requirements of a job' by saying that [claimant] was qualified for certain jobs in response to the ALJ's hypothetical question, she was indirectly providing such evidence." *Id*. at n. 19. Similarly, the VE herein also only gave responses to the ALJ's

15

hypothetical and did not discuss the requirements of the jobs identified. This Court agrees that the VE's responsive testimony to the ALJ's hypothetical is an indirect form of discussing the requirements of a job. Nonetheless, this does not end the Court's inquiry.

Neither at the hearing nor in her brief has Stull pointed to any conflict between the VE's testimony with respect to the jobs identified at Step Five – hand trimmer, laundry folder, collator, or operator occupations – and the DOT. In fact, Stull appears to rely solely upon the ALJ's failure to ask the VE whether or not his testimony was entirely consistent with the DOT. Several courts have held that where there is no conflict between the DOT and the VE's testimony, any error in failing to comply with the requirements of SSR 00-4p is harmless, and the Ninth Circuit Court of Appeals conceded as much in a footnote.

> Admittedly, the [ALJ's] failure to perform the SSR 00-4p inquiry made for a sloppy record in this case. Nonetheless, the [VE] testified that she was identifying security guard jobs that were unskilled and sedentary. AR 455. Because the [DOT] contains a job falling within the security guard category that is unskilled and requires only a sedentary exertional level, the [VE's] testimony was not entirely inconsistent with the [DOT].... It follows that in the absence of a conflict, the [ALJ's] error in failing to ask the [VE] about possible conflicts between her testimony and the [DOT] was harmless. *Renfrow v. Astrue*, 496 F.3d 918, 2007 U.S. App. LEXIS 19132, 2007 WL 2296409 (8th Cir. Aug. 13, 2007) (where no conflict between [VE's] testimony and Dictionary, [ALJ's] failure to perform SSR 00-4p inquiry was harmless); *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (noting in *dicta* that failure to comply with SSR 00-4p could be harmless if there was no conflict between vocational expert's testimony and Dictionary); *cf. Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (error not harmless where it was unclear from record whether expert's testimony was inconsistent with the Dictionary).

*Fessler v. Astrue*, 2007 U.S. Dist. LEXIS 70323, 14-15 (W.D. Wis. Sept. 21, 2007). A recent decision of another district court within this Circuit has found as follows:

> Failure to comply with the requirements of S.S.R. 00-4p, 2000 SSR LEXIS 8 can amount to either reversible or harmless error. If there is in fact a conflict between the VE testimony and the DOT, the ALJ's error is grounds for remand. *Lancaster*

16

*v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 563, 575 (6th Cir. 2007). If there is no conflict, courts are divided as to whether a mere failure to inquire about potential inconsistencies is grounds for remand or harmless error. *Id*. at 574; *see also Wix v. Astrue*, No. 3:08-1222, 2010 U.S. Dist. LEXIS 11319, 2010 WL 520565, at *7 (M.D. Tenn. Feb. 9, 2010) (acknowledging the split in case law and the Sixth Circuit's failure to resolve the issue). Thus, disposition of this issue rests on a three-step inquiry: (1) whether the ALJ asked the VE about the DOT; (2) if the ALJ did not, whether there was an actual conflict between the VE's testimony and the DOT; and (3) if there was not conflict, whether failure to ask the VE about the DOT is harmless error.

*Bratton v. Astrue*, 2010 U.S. Dist. LEXIS 72752 at **6-7 (M.D. Tenn. Jul. 19, 2010); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, (6th Cir. 2009) (finding no authority for the proposition that requires an ALJ to employ the precise language used in SSR 00-4p). Given that Stull has failed to identify any inconsistency between the VE's testimony and the DOT, the ALJ's failure to comply with SSR 00-4p, under the circumstances presented, is harmless.[7]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED.

s/ Greg White
U.S. Magistrate Judge

Date: January 18, 2011

---

[7] It is not the Court's function to search the administrative record for evidence to support Stull's argument and find inconsistencies. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).